ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| MARICELI RIVERA GONZÁLEZ<br><br>Recurrida<br><br>v.<br><br>UNIVERSAL PROPERTIES REALTY GOVERNMENT SERVICE Y OTROS<br><br>Peticionario | TA2025CE00779 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.:<br>MZ2023CV01390<br><br>Sobre: Incumplimiento de Contrato |
|---|---|---|

Panel integrado por su presidente el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Prats Palerm, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 4 de diciembre de 2025.

Comparece el Municipio de San Germán ("Municipio" o "Peticionario") mediante *Petición de Certiorari* y nos solicita que revisemos una *Resolución* dictada el 23 de octubre de 2025, notificada el día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez ("TPI"). En virtud del referido dictamen, el TPI denegó las solicitudes de sentencia sumaria instadas, respectivamente, por el Municipio y Mariceli Rivera González ("señora Rivera González" o "Recurrida").

Por los fundamentos que proceden, se deniega la expedición del auto de *certiorari* solicitado.

## I.

El 10 de agosto de 2023, la señora Rivera González instó una *Demanda* sobre incumplimiento contractual en contra de Universal Properties Realty Government Services, LLC ("Universal Properties") y el Municipio de San Germán. Posteriormente, el 23 de abril de 2024, la demanda fue enmendada a los únicos efectos de incluir como parte indispensable a los dueños registrales del inmueble objeto de controversia, Felipe Montalvo Ramírez y su esposa Mercedes M. Flores.

La señora Rivera González adujo que, el 31 de enero de 2022, suscribió un *Contrato para la expropiación y adquisición de propiedad del Programa de Estorbos Públicos del Municipio de San Germán,* con Universal Properties, actuando en representación del Municipio. Expuso que, mediante el referido contrato, se acordó la compra y venta de la siguiente propiedad inmueble: "8 Calle Victoria, San Germán, Puerto Rico, número asignado de Estorbo Público 2021-SGE-0224-I-29204". Alegó que, a los fines de cumplir con el contrato, le pagó a Universal Properties la totalidad de lo acordado, $22,000.00.

Manifestó que, transcurrido el tiempo, Universal Properties le comunicó que se encontraban en trámites para culminar y otorgarse la escritura correspondiente. Expresó que, en atención a que Universal Properties no había cumplido con sus obligaciones contractuales, le cursó una comunicación con la intención de resolver el contrato. Sostuvo que, ante ello, Universal Properties le respondió que la propiedad en controversia no era un estorbo público, sino que le pertenecía al Municipio en usufructo, por lo que, la señora Rivera González debía escoger otro inmueble del inventario de propiedades. Sin embargo, puntualizó que, el 22 de marzo de 2023, le cursó una carta a Universal Properties en la cual solicitó el cumplimiento específico de lo acordado mediante el contrato. Debido al incumplimiento con lo peticionado, arguyó que Universal Properties y el Municipio incurrieron en dolo, negligencia y mala fe, ocasionándole así sufrimientos y angustias mentales por una cantidad no menor de $50,000.00. A su vez, solicitó que se le ordenara al Municipio a cumplir con el contrato o, en la alternativa, que se le ordenara a venderle directamente la propiedad inmueble.

El 12 de octubre de 2023, el Municipio presentó su contestación a la demanda, en la cual incluyó una demanda contra coparte, en contra de Universal Properties. Expuso que, el 27 de febrero de 2019, suscribió el Contrato 2019-000396 con Universal Properties, mediante el cual Universal Properties se obligó a realizar todos los trabajos técnicos necesarios para la administración del Programa de Control de Estorbos Públicos del Municipio. Manifestó que el referido contrato solo incluía aquellas propiedades que se encontraban en estado de abandono y en proceso de ser declaradas como estorbos públicos. Así

dispuesto, alegó que el inmueble en controversia no formaba parte del Programa de Estorbos Públicos. Por tanto, razonó que el contrato suscrito entre la señora Rivera González y Universal Properties era nulo porque la propiedad le pertenece al Municipio. Añadió que cualquier daño sufrido por la señora Rivera González como consecuencia de las representaciones y actuaciones de Universal Properties es responsabilidad exclusiva de este último.

Tras varias instancias procesales, a solicitud de parte, el TPI le anotó la rebeldía a Universal Properties y a los titulares registrales del inmueble, mediante Órdenes dictadas, de manera respectiva, el 21 de noviembre de 2024 y el 11 de diciembre de 2024.

El 21 de junio de 2025, la señora Rivera González radicó una *Moción Solicitando Sentencia Sumaria*. En respuesta, el 29 de julio de 2025, el Municipio instó una *Oposición a Moción de Sentencia Sumaria y Moción de Sentencia Sumaria Parcial*. En lo aquí pertinente, razonó que no está obligado a transferirle la propiedad a la señora Rivera González, debido a que: (1) el Municipio no consintió al negocio jurídico entre Universal Properties y la señora Rivera González; (2) la propiedad no estaba incluida en el contrato de administración entre el Municipio y Universal Properties; (3) la venta del inmueble no fue aprobada por la Legislatura Municipal; (4) las ventas de solares municipales dados en usufructos deben realizarse mediante escritura pública suscrita por el alcalde o por un funcionario autorizado; (5) el precio de venta de dichos solares debe ser establecido por tasación; (6) Universal Properties no estaba facultado a vender propiedades del Municipio; (7) el contrato entre el Municipio y Universal Properties es nulo, por ende, el contrato entre Universal Properties y la señora Rivera González también es nulo; (8) el contrato entre Universal Properties y la señora Rivera González no era de compraventa, sino para realizar las acciones dirigidas a expropiar la propiedad; y (9) de ser válido el contrato entre Universal Properties y la señora Rivera González, el mismo dispone que, de aparecer el dueño registral de la propiedad, el contrato queda resuelto y la señora Rivera González tendría el derecho a escoger otra propiedad o la devolución del dinero.

A su vez, añadió que el contrato entre el Municipio y Universal Properties era nulo porque no contiene todas las cláusulas dispuestas por el Artículo 5 de Ley Núm. 237-2004, según enmendada, conocida como la Ley para Establecer Parámetros Uniformes en los Procesos de Contratación de Servicios Profesionales y Consultivos para las Agencias y Entidades Gubernamentales del ELA, 3 LPRA sec. 8615. Por todo lo cual, peticionó que se desestimara la reclamación instada en su contra.

Por su parte, el 27 de agosto de 2025, la señora Rivera González notificó su *Planteamiento en torno a Oposición a Moción de Sentencia Sumaria y Moción de Sentencia Sumaria Parcial y Contestación a la misma.*

Precisó que el contrato entre Universal Properties y el Municipio, le confirió a Universal Properties la facultad de suscribir el contrato para la compraventa de la propiedad en controversia. Sostuvo, además, que contrario a lo argumentado por el Municipio, en el caso de epígrafe, el titular del inmueble nunca compareció a los procedimientos, por lo que no procedía la resolución del contrato.

El 23 de octubre de 2025, notificada el día siguiente, el TPI emitió la *Resolución* recurrida, mediante la cual denegó ambas solicitudes de sentencia sumaria. En atención a la prueba documental, el foro de instancia realizó las siguientes determinaciones de hechos no controvertidos:

1. El 27 de febrero de 2019 se otorgó el Contrato Núm. 2019-000396 CONTRATO SERVICIOS PROFESIONALES A CONTINGENCIA ADMINISTRACIÓN PROGRAMA CONTROL DE ESTORBOS PÚBLICOS DEL MUNICIPIO DE SAN GERMÁN.

2. En dicho contrato se hace constar que comparecen de la PRIMERA PARTE "EL MUNICIPIO AUTÓNOMO DE SAN GERMÁN, una Instrumentalidad Gubernamental creada bajo las Leyes del Estado Libre Asociado de Puerto Rico, [Ley Número 81 del 30 de agosto de 1991] representado este acto por su alcalde, HON. ISIDRO NEGRÓN IRIZARRY, funcionario público, mayor de edad, casado y vecino de San Germán, Puerto Rico y denominado de aquí en adelante como "EL MUNICIPIO".

3. También en dicho contrato se hace constar que comparece de la SEGUNDA PARTE "UNIVERSAL PROPERTIES REALTY GOVERNMENT SERVICE, LLC; una corporación doméstica, con fines de lucro, debidamente organizada y haciendo negocios bajo las leyes de Puerto Rico, Registro Núm. 405137; Entidad creada con el fin de prestar servicios en beneficio de los Municipios del Estado Libre Asociado de

Puerto Rico, emitido por el Departamento de Estado de Puerto Rico y con oficina cede en Toa Baja, Puerto Rico, con licencia de Empresa de Bienes Raíces E-300, representada en este acto por su Presidente, ANDRES RAFAEL REYES VELEZ, mayor de edad, casado, Ejecutivo y vecino de Toa Baja, Puerto Rico, con dirección postal: 3008, Suite 2, Levittown Dev., Toa Baja, Puerto Rico 00949, designándose en adelante a esta parte como "EL CONTRATADO".

4. El mencionado Contrato fue firmado por el alcalde de San Germán, Isidro Negrón Irizarry y Andrés Rafael Reyes Vélez, Presidente-Director de Universal Properties Realty Government Services LLC E-300.

5. En el mencionado Contrato, las partes claramente exponen: "PRIMERO: "EL MUNICIPIO" interesa contratar los servicios técnicos y los servicios profesionales de "EL CONTRATADO" para que realice todos los trabajos técnicos necesarios para la administración del Programa de Control de Estorbos Públicos utilizando los procesos establecidos por medio de la Ley Núm. 81 de 1991, según enmendada, (en lo sucesivo "LA LEY NUM. 81"); la Ley Núm. 31 de 2012, según enmendada, conocida como Ley para Viabilizar la Restauración de las Comunidades de Puerto Rico, (en lo sucesivo "LA LEY NUM. 31), Ley Núm. 13 de 3 de marzo de 2016 (en lo sucesivo "LA LEY NUM. 13") , la Ley Núm. 83 de 6 de agosto de 2017 (en lo sucesivo "LA LEY NUM. 83") (en lo sucesivo, "Las Leyes Aplicables"), y la Ordenanza Núm. 29, Serie 1992-1993 y la Ordenanza Núm. 14, Serie 1999-2000 (en lo sucesivo, "LA ORDENANZA") medidas que atienden los asuntos relacionados a propiedades a ser declaradas y/o a ya declaradas estorbos públicos en el Municipio de San Germán y otros fines relacionados a dichas propiedades así como remoción de detrimento, la limpieza, control, adquisición, venta de Estorbos Públicos y otros."

6. En el contrato, las partes también acordaron con respecto a Universal Properties lo siguiente: 1. "EL CONTRATADO" cubrirá inicialmente los todos los gastos relacionados a los servicios, trámites y otros gastos operacionales establecidos, necesarios para atender los casos de propiedades que se consideren Estorbos Públicos conforme a lo propuesto y sujeto a LA ORDENANZA Núm. 29, Serie 1992-1993 y la Ordenanza Núm. 14, Serie 1999-2000 por la Asamblea Municipal y/o personal Designado para este propósito, en adelante Reglamentación de Procesos, cual va al proceso del detalle designado en dicho contrato, para lograr que la Legislatura Municipal y/o personal Designado por el Municipio de San Germán declare como estorbos públicos conforme a las "LEYES APLICABLES" y a "LA ORDENANZA", AQUELLAS ESTRUCTURAS QUE "EL MUNICIPIO" y/o "EL CONTRATADO" han identificado como posibles estorbos públicos pero que aún no han sido declarados como tales e inclusive aquellas propiedades donde el Municipio ya comenzó un proceso y posterior a este contrato, "EL MUNICIPIO" le delega a "EL CONTRATADO" tal gestión y "EL CONTRATADO" la culmine en representación del Municipio para los fines de este contrato.

7. El contrato establece en sus CLAUSULAS Y CONDICIONES PRIMERA (2) lo siguiente:

2. "EL CONTRATADO" cubrirá inicialmente todos los gastos relacionados a los servicios, trámites y costos operacionales establecidos conforme a "LA ORDENANZA Núm. 29, Serie 1992-1993 y la Ordenanza Núm. 14, Serie 1999-2000" y sus enmiendas, si alguna, por Asamblea Municipal y/o Agente

Designado para este propósito, en adelante se establece, pero no se limita en los detalles del proceso a seguir para la tramitación, para la adecuada declaración de estorbo público de propiedades; el establecimiento y registro de gravámenes, para la adquisición y venta a favor de "EL MUNICIPIO" sobre los estorbos públicos, conforme a las "LEYES APLICABLES" y a "LA ORDENANZA", tales como: a. Proceso administrativo municipal para la declaración de estorbos públicos. b. Venta al Público en General e Inversionistas, post título. c. Reportes descriptivos de la propiedad. d. Rotulación (según exige la LEY) e. Seguros y endosos a favor de "EL MUNICIPIO", de ser necesarios según cada caso. f. Seguridad y estabilización de cada propiedad en forma individual. g. Exposición al mercado según aprobada. h. Servicios de mitigación de conflictos, de ser necesarios Plan de cobro de multas por gravamen (Según exige la LEY) j. Plan de adquisición titular en cada propiedad (Según exige la LEY) k. Tracto titular y anejos de mercado (Según exige la LEY) l. Rectificación de retos legales en cada propiedad m. Mensura, base al CRIM n. Estudio de título o. Seguro de título p. Evaluación de zona inundable q. Zonificación r. Tasación (Por peritos en propiedades abandonadas y reposeídas) s. BPO's (CMA) (Por expertos en propiedades reposeídas) t. Venta en pública subasta bajo Ley #10 del 1994 u. Resolución de conflictos: i. Legales ii. Catastrales iii. De mensura y colindancia iv. De usufructo v. De invasión vi. Otros problemas aplicables, de ser necesario.

8. Referente a los términos de la vigencia del mencionado contrato, se hizo constar que sería por un término de 5 años desde el 28 de febrero de 2019 hasta el 27 de febrero de 2024.

9. El mencionado Contrato fue presentado ante la Oficina de Contralor de PR.

10. El 31 de enero de 2022, en San Germán, Puerto Rico, la parte demandante Mariceli Rivera González y la parte demandada, Universal Realty Government Services, LLC, esta última en representación del Municipio de San Germán, firmaron "CONTRATO PARA LA EXPROPIACIÓN Y ADQUISICION DE PROPIEDAD DEL PROGRAMA DE ESTORBOS PUBLICOS DEL MUNICIPIO DE SAN GERMÁN".

11. En el mencionado Contrato se hace constar que Universal Properties cumplió con todos los requisitos de ley con respecto a la expropiación forzosa y su posterior venta de la propiedad expropiada. El Contrato dispone lo siguiente:

"PRIMERO: "UNIVERSAL" en su función de administrar el Programa de Control de Estorbos Públicos conforme a la Ley de 12 de marzo de 1903, conocida como Ley General de Expropiación Forzosa; la Ordenanza Municipal Núm. 2020-00396; y la Ley Núm. 107 de 14 de agosto de 2020, conocida como Código Municipal de Puerto Rico, en lo sucesivo, "EL DERECHO APLICABLE", salvo pacto en contrario, tiene disponible el Inventario de Propiedades y/o solares del Municipio de San Germán el cual manifiesta haber cumplido con todos los requisitos de ley para ser declaradas un estorbo público. SEGUNDO: Mediante el contrato Núm. 2020-000396 previamente suscrito, "Universal" proveerá los servicios técnicos necesarios para la administración del Programa de Control de Estorbos Públicos, así como remoción de detrimento, control, adquisición, venta de Estorbos Públicos y otros, según establecido en el contrato de referencia. "Universal" fungirá como intermediario entre "El Municipio" y

el Solicitante Adquiriente para iniciar el proceso de expropiación conforme la "EL DERECHO APLICABLE".

12. Como parte de los procedimientos que dispone la Ley de Expropiación, el Municipio de San Germán previamente había publicado edictos en el Periódico Primera Hora con fecha de septiembre de 2013 y en su contenido hace constar que el "Municipio Autónomo de San Germán, Apartado 85, San Germán, PR 33683 realiza una Notificación sobre Declaración de Estorbo Público. Esta notificación, en su inciso treinta (30) identifica la propiedad inmueble con dirección 6 Calle Victoria e identifica al último dueño conocido como Felipe Montalvo.

13. En el mismo edicto también se hizo constar que las personas identificadas en este tienen 30 días para contestar este aviso disponiéndose así lo siguiente: "4. Se le concede a los afectados por este aviso un término de 30 días calendario para contestar el mismo a partir de esta publicación. Deberá dirigirse al tribunal administrativo municipal, cuyas oficinas están ubicadas en la calle Dr. Veves #98. La dirección postal es P.O. Box 85, San Germán, Puerto Rico 00683".

14. También, como parte de los procedimientos para la expropiación del bien inmueble como el que propició el presente pleito, el Municipio de San Germán había publicado edicto en el Periódico Primera Hora con fecha de 25 de marzo de 2014 intitulado "Municipio Autónomo de San Germán, Apt. 85, San Germán, Puerto Rico 00683, Tel. (787) 392-3500, Ext. 2293/2294 Notificación sobre Revocación de Usufructo". En dicho edicto se identifica en su inciso 2 una propiedad inmueble con dirección física de la propiedad 6 Calle Victoria y su titular es identificado como Felipe Montalvo Ramírez. También se hace constar que la persona afectada por el aviso tiene 30 días para contestar la misma a partir de la publicación para solicitar una Vista Administrativa y deberá dirigirse al Tribunal Administrativo Municipal.

15. En el Contrato otorgado entre la demandante y Universal Properties acordaron lo siguiente: "---DOS: El "SOLICITANTE ADQUIRIENTE" interesa la propiedad declarada como estorbo público en el Municipio de San Germán con la siguiente descripción registral de CRIM: 334-023-004-24-001, cuya ubicación física es: 8 CALLE VICTORIA SAN GERMÁN PUERTO RICO y número asignado de Estorbo Público 2021-SGE-0224-I-29204. A la firma del presente contrato el "SOLICITANTE-ADQUIRIENTE" proveyó a "EL MUNICIPIO" y/o "UNIVERSAL" la suma de veintidós mil ($22,000.00) dólares equivalentes para el pago del valor de la propiedad y las costas del procedimiento incluyendo el estudio de título, reembolso del costo de la tasación, emplazamientos, gastos notariales e inscripción de título en el Registro de la Propiedad. El "SOLICITANTE-ADQUIRIENTE" tiene la obligación de revisar la propiedad y releva totalmente de responsabilidad a "EL MUNICIPIO" y/o "UNIVERSAL" de cualquier reclamación, contaminación ambiental, vicio de construcción y/o que pudiese tener la propiedad. "AS IS WHERE IS"."

16. La demandante pagó la cantidad de $22,000.00 sobre la compra de la propiedad cumpliendo así con lo acordado con Universal Properties en el contrato.

17. La demandante y Universal Properties acordaron expresamente que, de aparecer el titular de la propiedad durante el proceso, se ofrecerían distintas propiedades para ser escogidas por dicha demandante. Sobre

este particular se acordó lo siguiente: "--- NUEVE: "EL SOLICITANTE-ADQUIRIENTE" acepta expresamente que, de aparecer el titular de la propiedad durante el proceso, se le ofrecerá distintas propiedades para ser escogida por éste. Lo anterior, sujeto a la disponibilidad de inventario. De lo contrario, procederá el reembolso de lo pagado por el "SOLICITANTE-ADQUIRIENTE".

18. Conforme a Certificación de Propiedad Inmueble, la propiedad inmueble está inscrita a favor del Municipio de San Germán mientras que está inscrito el uso y aprovechamiento de la casa a título ganancial a favor de los esposos Felipe Montalvo Ramírez y Mercedes M. Flores.

19. Universal Properties fue debidamente emplazado mediante edicto sobre el presente caso.

20. Los esposos Felipe Montalvo Ramírez y Mercedes M. Flores son la parte demandada en el presente caso, fueron emplazados mediante edicto.

21. En nuestra Resolución el 26 de noviembre de 2024 se le anotó la rebeldía a Universal Properties.

22. En nuestra Resolución del 13 de diciembre de 2024 se les anotó la rebeldía a los esposos Felipe Montalvo Ramírez y Mercedes M. Flores.

23. El Municipio le informó a la demandante que procediera a buscar el dinero que pagó por la propiedad porque podría perderlo.

24. El contrato entre el Municipio y Universal Properties establece en su hecho PRIMERO que el objetivo de dicho contrato. En lo pertinente establece que:

> "EL MUNICIPIO" interesa contratar los servicios técnicos y los servicios profesionales de "EL CONTRATADO" para que realice todos los trabajos técnicos necesarios para la administración del Programa de Control de Estorbos Públicos utilizando los procesos establecidos por medio de la Ley Núm. 81 de 1991, según enmendada, (en lo sucesivo "LA LEY NUM. 81"); la Ley Núm. 31 de 2012, según enmendada, conocida como Ley para Viabilizar la Restauración de las Comunidades de Puerto Rico, (en lo sucesivo "LA LEY NUM. 31), Ley Num.13 de 3 de marzo de 2016 (en lo sucesivo "LA LEY NUM. 13"), la Ley Núm. 83 de 6 de agosto de 2017 (en lo sucesivo, "LA LEY NUM. 83") (en lo sucesivo, "Las Leyes Aplicables"), y la Ordenanza Núm. 29, Serie 1992-1993 y la Ordenanza Núm. 14, Serie 1999- 2000 (en lo sucesivo, "LA ORDENANZA") medidas que atienden los asuntos relacionados a propiedades a ser declaradas y/o ya declaradas como estorbos públicos en el Municipio de San GERMÁN y otros fines relacionados a dichas propiedades así como remoción de detrimento, la limpieza, control, adquisición, venta de Estorbos Públicos y otros.

25. El contrato entre el Municipio y Universal Properties establece en su cláusula TERCERA que:

> "EL CONTRATADO" asistirá en la enajenación del estorbo público y/o del gravamen de la Hipoteca Legal Tacita (gravamen) bajo "LA LEY NUM. 81 Y LEVES APLICABLES", se constituya sobre cualquier inmueble realizando todas aquellas gestiones administrativas y de mercadeo relacionadas a la celebración de las ventas en pública subastas de los inmuebles de los que advenga titular "EL MUNICIPIO" luego de la acción judicial de ejecución o de los correspondientes Gravámenes;

exceptuando aquellas funciones, como la adjudicación de la subasta y la declaración de subasta desierta, que la Ley de Municipios Autónomos y el reglamento municipal pertinente reserven a la Junta de Subastas del Municipio.

26. El contrato entre el Municipio y Universal Properties establece en su cláusula VIGESIMA 7MA el objetivo del contrato. Específicamente, la cláusula VIGESIMA 7MA expresa que:

> "EL CONTRATADO" presentará a "EL MUNICIPIO", y utilizaran la propuesta y tablas de costos, como base informativa junto a los reglamentos y leyes aplicables, para implementar el "PLAN PARA LA ADMINISTRACION, DECLARACION Y VENTA DE ESTORBOS PUBLICOS", a conocerse como parte de las tareas de comunicación e implementación conjunto y bajo aprobación del personal designado. Lo anterior previo a comenzar cualquier trámite para la declaración de cualquier estorbo público que al día de la firma del presente contrato aun no haya sido designado como tal. Aquellas propiedades que al día de la firma del presente contrato ya hayan sido declaradas estorbos públicos podrán ser objeto de publica subasta tan pronto se concretice este acuerdo.

27. El contrato entre el Municipio y Universal Properties no contiene una cláusula que certifique que Universal Properties ha rendido planillas de contribución sobre ingresos durante los últimos cinco años contributivos, y no adeuda contribuciones al gobierno, o que se encuentra acogido a un plan de pago.

28. El contrato entre el Municipio y Universal Properties no contiene una cláusula que exprese que el Municipio podrá resolver el contrato mediante notificación con treinta (30) días de anticipación a la resolución, o en un término menor, dependiendo de los servicios a contratarse.

29. El contrato entre el Municipio y Universal Properties no contiene una cláusula que exprese que el Municipio podrá dejar sin efecto el contrato inmediatamente en caso de negligencia, abandono de deberes o incumplimiento por parte de Universal Properties.

30. El contrato entre la señora Rivera y Universal Properties establece en sus hechos PRIMERO y SEGUNDO que Universal Properties administra el Programa de Control de Estorbos Públicos y administra las adquisiciones de estas propiedades mediante expropiación forzosa.

31. El contrato entre la señora Rivera y Universal Properties establece en su acápite CUARTO que las partes están en común acuerdo "para iniciar el proceso de expropiación según las cláusulas aquí establecidas". En adición, la cláusula CUATRO de las CLAUSULAS Y CONDICIONES se establece que el SOLICITANTE-ADQUIRIENTE "...se compromete a reconstruir, restaurar o realizar nueva edificación a la propiedad adquirida mediante el procedimiento de expropiación".

32. El contrato entre la demandante y Universal Properties establece en su cláusula UNO que Universal Properties: a) administra el inventario de propiedades declaradas o a ser declaradas estorbos públicos; b) asistirá al Municipio a adquirir estas propiedades mediante expropiación forzosa; c) asistirá al Municipio en la transferencia de la titularidad de estas propiedades; y d) no le traspasará la titularidad de la propiedad a la señora Rivera hasta ella pague el costo del proceso.

33. El contrato entre la demandante y Universal Properties establece en sus cláusulas DOS que la Propiedad a ser adquirida por la Sra. Mariceli Rivera ubica en la calle Victoria #8 de San Germán, declarada como estorbo público y luego se le transferirá. Además, establece que la señora Rivera le entregó $22,000 a Universal Properties al momento de la firma del contrato como pago del precio de la propiedad y los gastos del proceso para adquirir la propiedad.

34. El contrato entre la señora Rivera y Universal Properties establece en su cláusula NUEVE que "...de aparecer el titular de la propiedad durante el proceso, se le ofrecerá distintas propiedades para ser escogidas por éste. Lo anterior, sujeto a la disponibilidad de inventario. De lo contrario, procederá el reembolso de lo pagado por el "SOLICITANTE ADQUIRIENTE"."

35. El contrato entre la señora Rivera y Universal Properties establece en su cláusula DIEZ que "[t]oda controversia derivada de este contrato, incluida cualquier cuestión relativa a su existencia, validez, terminación, interpretación o ejecución, será resuelta mediante arbitraje, siendo esta la jurisdicción primaria exclusiva sobre las controversias que pudiesen existir."

36. El 16 de agosto de 2022, Universal Properties le notificó a la demandante a través de su representante legal que la Propiedad no podía ser expropiada porque le pertenece al propio Municipio de San Germán, y se le ofreció otra propiedad o la devolución del dinero.[1]

Cónsono con lo anterior, concluyó que la prueba presentada no era suficiente para determinar lo siguiente: (1) la aplicabilidad del contrato otorgado entre Universal Properties y el Municipio a la controversia de autos; y (2) si el Municipio está obligado a vender el inmueble reclamado por la señora Rivera González.

Atinente a la controversia ante nos, resulta preciso señalar que el foro de instancia acogió la totalidad de los hechos incontrovertidos propuestos por el Municipio en su solicitud de sentencia sumaria parcial, con excepción del siguiente: "8. El contrato entre la señora Rivera y Universal Properties establece en sus hechos TERCERO y CUARTO que su propósito es que se adquiera por expropiación forzosa una propiedad".[2] No obstante, el TPI concluyó que la solicitud resultaba improcedente, ya que existen alegaciones contra el Municipio sobre daños y perjuicios, las cuales envuelven elementos de intención y credibilidad que deben ser dilucidados en una vista en su fondo.

---

[1] *Véase*, Apéndice del recurso, Entrada Núm. 102, págs. 16-23.
[2] *Véase*, Apéndice del recurso, Entrada Núm.    , pág. 5.

Inconforme, el 17 de noviembre de 2025, el Municipio acudió ante esta Curia mediante *Petición de Certiorari* y le imputó al foro de instancia la comisión de los siguientes errores:

> **Erró el TPI al concluir que existen controversias de hecho que impiden resolver este caso en lo que al Municipio se refiere.**

> **Erró el TPI al no resolver que el Contrato 2019-000396 es nulo.**

> **Erró el TPI al no resolver que el contrato entre Universal Properties y la señora Rivera es nulo en cuanto a que obliga al Municipio a venderle la propiedad objeto de dicho contrato.**

El 1 de diciembre de 2025, la señora Rivera González notificó su *Alegato de la Parte Recurrida*. Perfeccionado el recurso y contando con el beneficio de la comparecencia de las partes, nos encontramos en posición de resolver.

## II.

### -A-

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia, se trata de un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *Rivera et als. v. Arcos Dorados*, 212 DPR 124 (2023); *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare, LLC*, 194 DPR 723, 728-729 (2016); véase, además, Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.; IG Builders et al v. BBVAPR*, 185 DPR 307, 337-338 (2012).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, delimita expresamente las instancias en las que este Tribunal de Apelaciones puede expedir los recursos de *certiorari* para revisar resoluciones y órdenes interlocutorias del foro de Instancia. *800 Ponce de León Corp. v. American International Insurance, supra*; *Scotiabank de Puerto Rico v. ZAF Corporation*, 202 DPR 478, 487 (2019). En lo pertinente, la referida regla dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de

carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari, en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. 32 LPRA Ap. V, R. 52.1.

Aun cuando al amparo del precitado estatuto adquirimos jurisdicción sobre un recurso de *certiorari*, la expedición del auto y la adjudicación en sus méritos es un asunto discrecional. No obstante, tal discreción no opera en el abstracto. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). La Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari*, a saber:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para analizar el problema.
C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio, parcialidad o error manifiesto. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). En el ámbito jurídico la discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). La discreción se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. *Íd.* Por lo anterior, un adecuado ejercicio de discreción judicial

está estrechamente relacionado con el concepto de razonabilidad. *Umpierre Matos v. Juelle Albello*, 203 DPR 254, 275 (2019); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**-B-**

El mecanismo de sentencia sumaria dispuesto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36, permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones donde no exista controversia material de hecho que requiera ventilarse en un juicio plenario, y el derecho así lo permita. *Negrón Castro y otros v. Soler Bernardini y otros*, 216 DPR ____ (2025); 2025 TSPR 96. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). Mediante el mismo, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón, supra*. Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Íd.*

Al presentar una moción de sentencia sumaria, al amparo de la Regla 36.2 de Procedimiento Civil, *supra*, se deberá cumplir con los siguientes requisitos de forma: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *Pérez Vargas v. Office Depot/Office Max, Inc.*, 203 DPR 687 (2019).

Al considerar la solicitud, el Tribunal deberá asumir ciertos los hechos no controvertidos que se encuentran sustentados por los documentos presentados

por el promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). La inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues sólo procede si bajo ningún supuesto de hechos prevalece el promovido. *Íd.*, pág. 625. Conforme a esta normativa procesal, la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. *León Torres v. Rivera Lebrón, supra.* Por el contrario, viene obligada a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en su solicitud puesto que, de incumplir, corre el riesgo de que se dicte sentencia sumaria en su contra, de la misma proceder en derecho. *Íd.*

En la oposición a una solicitud de sentencia sumaria, el promovido debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *Íd.* Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* Al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente en todo momento que su determinación puede conllevar el que se prive a una de las partes de su día en corte, componente integral del debido proceso de ley. *Íd.*

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193, 212 (2006). Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos

complejos o aquellos en los que estén presentes cuestiones de interés público". *Íd.*, pág. 579.

Por otro lado, sabido es que, cuando un Tribunal emita una sentencia, especificará los hechos que fueron probados y consignará separadamente sus conclusiones de derecho. Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V., R. 42.2. Si el Tribunal deniega una moción de sentencia sumaria, no concede todo el remedio solicitado o no resuelve la totalidad del pleito, la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, expresa que "será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos [...]". Lo anterior simplifica el desfile de prueba en el juicio, pues los hechos no controvertidos se consideran probados. *Ramos Pérez v. Univisión*, 178 DPR 200, 221 (2010).

Además, y según dispuesto por el Tribunal Supremo de Puerto Rico, los criterios de revisión apelativa ante una sentencia sumaria son los siguientes: (1) no se puede considerar prueba no presentada ante el nivel de instancia; (2) no se puede adjudicar hechos materiales en controversia; (3) la revisión apelativa es *de novo*; (4) se debe examinar el expediente de la manera más favorable hacia quien se opone a la solicitud de sentencia sumaria; (5) se debe observar que las mociones cumplan con los requisitos de la Regla 36 de Procedimiento Civil de 2009, *supra*, y lo discutido en *SLG Zapata Rivera v. JF Montalvo, 189 DPR 414 (2013)*; (6) debe exponer los hechos materiales controvertidos y los incontrovertidos si los hubiese; y (7) ante un caso donde no existan hechos materiales en controversia, el tribunal apelativo procederá a revisar *de novo* si el TPI aplicó correctamente el Derecho. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118-119 (2015). Asimismo, nuestro más Alto Foro señaló que:

> [...] el Tribunal de Apelaciones debe: 1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; 2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los de formas codificados en la referida Regla 36, *supra*; 3) revisar si en realidad existen

hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos; 4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas,* 199 DPR 664, 679 (2018).

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. *González Santiago v. Baxter Healthcare*, 202 DPR 281 (2019). A tal efecto, nuestra revisión es una *de novo*, y el análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa. *Íd.* De esta manera, si encontramos que los hechos materiales realmente están incontrovertidos, debemos revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el derecho. *Negrón Castro y otros v. Soler Bernardini y otros, supra*; *González Santiago v. Baxter Healthcare, supra*.

### III.

En el recurso que nos ocupa, la parte peticionaria aduce que el foro de instancia incidió al denegar su solicitud de sentencia sumaria parcial. Luego de examinar cuidadosamente el expediente, a la luz de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual esta Curia deba intervenir en esta etapa de los procedimientos. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el foro de primera instancia haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. En el recurso que aquí atendemos no se nos ha demostrado la existencia de alguno de estos escenarios.

### IV.

Por los fundamentos que anteceden, los cuales se hacen formar parte de esta Resolución, se deniega la expedición del auto de *certiorari* solicitado. Se devuelve al Tribunal de Primera Instancia, Sala Superior de Mayagüez, para la continuación de los procedimientos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones